UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ERIC BOYER, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. | |
| § | | |
| PILOT TRAVEL CENTERS, LLC, § | SA-05-CA-0978 FB (NN) | |
| § | | |
| Defendant. § | | |

**MEMORANDUM AND RECOMMENDATION
REGARDING DEFENDANTS' MOTIONS TO DISMISS**

**TO:** Hon. Fred Biery
United States District Judge

This memorandum and recommendation addresses a motion for summary judgment filed by defendant Pilot Travel Centers (Pilot). Through its motion, Pilot seeks complete summary judgment on plaintiff Eric Boyer's claim under the Fair Labor Standards Act (FLSA). I have jurisdiction to enter this memorandum and recommendation under 28 U.S.C. § 636(b) and the district court's order referring all pretrial maters to me for disposition by order or to aid the district court by recommendation where my authority as a Magistrate Judge is statutorily constrained.[1] After considering the motion, I recommend granting the motion for summary judgment.

**Jurisdiction**

The district court has jurisdiction over this case under 28 U.S.C. § 1331 because the case is a civil action brought under the laws of the United States—specifically, 29 U.S.C. § 215(a)(3).

---

[1]*See* docket entry # 36.

**The Plaintiff's Claim**

Previously, Boyer worked as General Manager of a Pilot travel center store. Boyer has sued Pilot alleging a violation of 29 U.S.C. § 215(a)(3). Boyer alleges that Pilot terminated him because he opted into a FLSA class action lawsuit brought against Pilot concerning unpaid overtime—specifically, a lawsuit styled *Doornbos v. Pilot Travel Centers, L.L.C.* Pilot, however, maintains that Boyer was terminated for poor performance and that it had no knowledge of Boyer's participation in the class action lawsuit.

**Whether Boyer Can Make a Prima Facie Showing of a Violation of the FLSA**

Pilot first moves for summary judgment on grounds that Boyer cannot make a prima facie showing of a violation of the FLSA. Pilot argues that Boyer cannot make a prima facie showing because he cannot show that he participated in protected activity. Pilot relies on the activity identified in Boyer's complaint—participation in the *Doornbos* lawsuit.

The FLSA's anti-retaliation provision makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee. . . ."[2] Little Fifth Circuit case law exists about this type of violation, but other circuits agree that the *McDonnell Douglas* burden shifting analysis applies to a FLSA case.[3]

---

[2] 29 U.S.C. § 215(A)(1).

[3] *See Brock v. Casey Truck Sales*, 839 F.2d 872, 876 (2d Cir. 1988) (stating that the *McDonnell-Douglas* burden shifting analysis applies to a FLSA case); *Adair v. Charter County of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006) (same); *Grey v. City of Oak Grove*, 396 F.3d 1031, 1034 (8th Cir. 2005) (same); *Pacheco v. Whiting Farms*, 365 F.3d 1199, 1206 (10th Cir. 2004) (same).

The circuits also agree that a plaintiff alleging a violation of the FLSA must establish a prima facie case of retaliation by proving: (1) he engaged in activity protected by the FLSA, (2) he suffered an adverse action by the employer subsequent to or contemporaneous with the protected activity, and (3) a causal connection existed between the protected activity and the adverse action.[4] Pilot maintains it is entitled to summary judgment because Boyer is not a plaintiff in the *Doornboos* lawsuit and thus cannot show that he participated in protected activity.

To support this argument, Pilot presented a list of the class members of the *Doornbos* lawsuit. Boyer's name is not on the list. Pilot also presented Boyer's deposition to show that no evidence exists that Boyer participated in protected activity. In his deposition, Boyer testified that he was a party in the class action lawsuit against Pilot. Boyer explained that prior to his termination, he contacted a lawyer in Las Vegas to find out what was going on with the lawsuit and learned that opt-in notices had been mailed. Boyer stated that he asked for an opt-in form and that after he received the form, he signed it and returned it to the address on the form. He could not recall the name of the lawyer or when he returned the form, and stated that he did not have a copy of the opt-in form. Boyer testified that although he did not tell his regional manager, Paul Christoffersen, that he had opted into the lawsuit, Christoffersen told him that he should not have opted-in. Boyer stated that he did not know how Christoffersen knew that he had opted-in, but said he had told Pilot employee Tommy Bennett about the lawsuit. Boyer testified that he did not tell any one he had opted into the lawsuit. He also testified that he had never complained about overtime pay. In addition to Boyer's deposition, Pilot presented Christoffersen's affidavit.

---

[4] *See Blackie v. Maine*, 75 F.3d 716, 722 (1st Cir. 1996); *Adair*, 452 F.3d at 489; *Grey*, 396 F.3d at 1034-35; *Pacheco v. Whiting Farms*, 365 F.3d 1199, 1206 (10th Cir. 2004); *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000).

In the affidavit, Christoffersen attested that he terminated Boyer for poor performance and that he did not know who was participating in the overtime lawsuit against Pilot.

Pilot's evidence supports its argument because it shows that Boyer is not a party to the lawsuit that is the basis of his claim. If true, Boyer's testimony shows that he attempted to engage in protected activity by opting into the *Doornbos* lawsuit and that Christoffersen may have thought that Boyer was participating in the lawsuit, but it does not show that Boyer actually participated in protected activity. As a result, Pilot is entitled to summary judgment on Boyer's claim unless Boyer presents summary judgment evidence that raises a fact question about his participation in protected activity.

In response, Boyer explains that he learned that he was not a party to the *Doornbos* lawsuit during discovery. To raise a fact question about his participation in protected activity, Boyer presented his wife's deposition. Mrs. Boyer testified that she called an attorney about the *Doornbos* lawsuit and gave the attorney Boyer's correct address. Mrs. Boyer stated that the attorney told her that she would contact Pilot to find out why Boyer's address had not been updated. Mrs. Boyer also testified that she saw Boyer sign the opt-in form and mail it. She stated that Bennett told her that Christoffersen asked him if Boyer was in the lawsuit and if Boyer had tried to get him (Bennett) to join the lawsuit.

Boyer also presented Bennett's deposition. Bennett testified that after Boyer's termination, Christoffersen asked him if Boyer was part of the lawsuit. Bennett stated that he told Christoffersen that he did not know because Boyer did not talk about it. Bennett testified that Christoffersen told him that he did not have to join the lawsuit because if the plaintiffs won, he would get the money anyway. When questioned about why Boyer was terminated, Bennett

answered that Christoffersen told him Boyer was terminated because of the condition of the store, because the gas pumps kept going down, and because sales were dropping. Bennett also testified that Boyer told him he was terminated because of store conditions and that Boyer did not tell him he was in the lawsuit until after he was terminated. Bennett stated that Mrs. Boyer called him after Boyer was terminated, but did not recall telling her that Christoffersen told him that Boyer was terminated because he was in the lawsuit.

Mrs. Boyer's deposition does not raise a fact question about Boyer's participation in protected activity because it does not show that Boyer participated in the *Doornbos* lawsuit. Instead, it shows that Boyer attempted to participate in the lawsuit. Bennett's deposition does not raise a fact question because although it shows Christoffersen asked Bennett if Boyer was in the lawsuit, it does not establish that Christoffersen thought Boyer was in the lawsuit because Bennett told Christoffersen that he did not know.

Boyer, however, urges the Court to interpret "protected activity" broadly and to find that his attempt to opt into the *Doornbos* lawsuit is protected activity. He argues that courts have relied on the remedial purpose of the FLSA to find that "nearly any act of an employee in seeking to vindicate his rights brings the employee within the protection of the FLSA's anti-retaliation provision." In particular, Boyer relies on a determination by the United States District Court for the Northern District of Georgia in which the district court treated an employee's request for information from the Department of Labor's Wage and Hour Division and her complaints to her employer that the time clock did not account for her overtime hours as protected activity.[5] The

---

[5]*See Daniel v. Winn-Dixie Atlanta*, 611 F. Supp. 57, 63 (D.C. Ga. 1985) (determining that evidence of an employee's actions to contact the Department of Labor and to complain to her employer that the time clock did not account for her overtime hours constituted evidence of protected

district court relied on the remedial purpose of the FLSA to extend protection to conduct "outside the precise statutory language" of the FLSA[6] in order to effectuate the FLSA's purpose.

The precise language of the FLSA applies to an employee who "has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee. . . ."[7] Under this precise language, Pilot's evidence indicates that Boyer has not engaged in protected activity. The evidence does not show protected activity because it shows that prior to his discharge, Boyer had not filed a complaint or instituted, or had caused to be instituted, any proceeding under the FLSA, or had testified and was about to testify, in any such proceeding, or served, or was about to serve on an industry committee.[8] Instead, the summary judgment evidence shows that Boyer attempted to opt into the *Doornbos* lawsuit.

Boyer is correct that some courts have been willing to extend protection beyond the FLSA's precise language. For example, the Tenth Circuit has treated an employee's request for overtime pay as protected activity.[9] But Boyer has presented no evidence indicating that he requested overtime pay. In addition, the Sixth Circuit has rejected an employer's argument that the FLSA's retaliation provision applies only to "actions occurring after the complaining

---

activity even though the employee never filed a complaint because a broad construction of section 215(a)(3) is consistent with the purpose of the FLSA).

[6]*Daniel*, 611 F. Supp. at 59.

[7]29 U.S.C. § 215(a)(1).

[8]29 U.S.C. § 215(a)(1).

[9]*See Pacheco v. Whiting Farms*, 365 F.3d 1199, 1207 (10th Cir. 2004) (stating that the "[p]laintiff engaged in protected activity when she requested overtime wages").

employee has instituted formal proceedings."[10] In that case, the Sixth Circuit relied on an earlier Tenth Circuit determination that the FLSA applied to informal complaints. Boyer has presented no evidence showing that he informally complained about overtime pay. The Eighth Circuit has treated an employee's refusal to sign-over a back-overtime pay check as protected activity, reasoning that the episode resulted from the employer's violation of the FLSA's overtime payment provisions.[11] Boyer has presented no evidence that he refused to comply with a Pilot request regarding overtime or evidence showing that Pilot violated the FLSA's requirements. In one case, the Third Circuit extended protection to an employee whose employer mistakenly believed that the employee had filed a complaint.[12] In that case, the employer and his wife admitted that one of the reasons the employee was terminated was because they thought that the employee had filed a claim with the Department of Labor and triggered an investigation.[13] Boyer has presented no evidence indicating that Pilot terminated him because Pilot thought he triggered an investigation.

    I did not locate any authority that indicates the Fifth Circuit would liberally construe the FLSA's language. I located only one opinion in which Fifth Circuit extended protection beyond a literal interpretation of the FLSA's language—*Wirtz v. Home News Publishing Company*.[14] In

---

[10]*EEOC v. Romeo Cmty. Sch.*, 976 F.2d 985, 989 (6th Cir. 1992).

[11]*See Brennan v. Maxey's Yamaha*, 513 F.2d 179, 183 (8th Cir. 1975).

[12]*See Brock v. Richardson,* 812 F.2d 121, 123 (3d Cir. 1987) (relying on the FLSA's remedial purpose to reject the argument that retaliation based on an employer's mistaken belief that an employee had filed a FLSA claim did not trigger the act).

[13]*See Richardson,* 812 F.2d at 122-23.

[14]341 F.2d 20 (5th Cir. 1965).

*Wirtz*, an employee alleged that he was terminated because he testified in response to a government subpoena in a criminal prosecution charging the employee's former employer with violations of the FLSA. The employer argued that the FLSA's retaliation provision did not apply because the employee had not "filed a complaint, or instituted or caused to be instituted a proceeding under the Act, and to an employee who has testified in such a proceeding."[15] After considering the purpose of the statute, the Fifth Circuit rejected the argument, concluding that the language "any proceeding under or related to [the act]"[16] included a criminal proceeding relating to the act.[17] No evidence of criminal prosecution exists here.

A later Fifth Circuit opinion indicates that the FLSA "should be liberally construed."[18] In that case, the Fifth Circuit considered whether two related defendant corporations constituted an "enterprise" within the meaning of the FLSA[19] and determined that the defendants constituted an enterprise because even though the corporate defendants had been placed under the immediate management of various supervisors, the founder, president and sole investor retained ultimate control over the corporations' operations.[20] The court did not interpret the language questioned in this case.

Because the summary judgment evidence indicates that Boyer only thought he had

---

[15] *Wirtz*, 341 F.2d at 22.

[16] 29 U.S.C. § 215(a)(1).

[17] *Wirtz*, 341 F.2d at 23.

[18] *Shultz v. Mack Farland & Sons Roofing Co.*, 413 F.2d 1296, 1300 (5th Cir. 1969).

[19] *Shultz*, 413 F.2d at 1297.

[20] *Id*. at 1299-1300.

participated in protected activity, and because no Fifth Circuit authority indicates that protected activity includes an employee's attempt to exercise his rights, I recommend the district court enter summary judgment in favor of defendant.

### Pilot's Other Arguments

Pilot also argues that Boyer cannot establish a causal link between his alleged protected activity and his termination and that Boyer cannot offer any evidence to show that pilot's reason for terminating Boyer was a pretext for unlawful retaliation.  Having concluded that no evidence of protected activity exits, I did not consider these arguments.  If the District Court chooses not to enter summary judgment in favor of Pilot on that basis, I will review the summary judgment evidence of casual link and pretext.

### Recommendation

Based on my analysis of the applicable case law and summary judgment evidence, I recommend the District Court GRANT defendant's motion for summary judgment  (docket entry # 22) on plaintiff's FLSA claim and enter summary judgment in favor of defendant Pilot.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Memorandum and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this Memorandum and Recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the District Court.[21]  **Such party shall file the objections with**

---

[21] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.** A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the District Court.[22] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Memorandum and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[23]

    **SIGNED** on January 3, 2007.

*Nancy Stein Nowak*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[22] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[23] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).